United States Court of Appeals,

Fifth Circuit.

No. 92-7040.

Alicia CORREA, et al., Plaintiffs-Appellants,

v.

Steve FISCHER, and Willacy County, Defendants-Appellees.

Feb. 11, 1993.

Appeal from the United States District Court for the Southern District of Texas.

Before GOLDBERG, HIGGINBOTHAM, and GARZA, Circuit Judges.

GOLDBERG, Circuit Judge:

*The setting:* a small town in Willacy County, south Texas.

*The main characters:* The plaintiffs are four former employees of the Willacy County Attorney's office who worked under former County Attorney Lee Fernon. Three of the plaintiffs, Correa, Carranco and Perez, were employed in clerical positions for fifteen, five, and thirteen years respectively. The fourth plaintiff, Strader, had been employed as an investigator for six months.

The principal defendant is Steve Fischer, the out-of-towner from El Paso who was elected to replace Fernon as the new County Attorney. The other defendant is Willacy County.

*The plot:* The story began when Steve Fischer, an attorney from El Paso, moved to Willacy County to work for Lee Fernon, the Willacy County Attorney. Along with Fischer, Fernon employed four staff members, Correa, Carranco, Perez and Strader. As assistant to Fernon, Fischer was in close working contact with the entire office staff.

Fischer worked as an assistant County Attorney under Fernon for about a year. As Fernon's elected term as County Attorney was nearing expiration, Fernon decided not to seek re-election. Fischer resolved to run for the position of County Attorney, in place of Fernon. Fischer ran unopposed, and in November of 1988, was elected as the new Willacy County Attorney.

The election of Fischer, though "unopposed," was by no means uneventful. Prior to the November 1988 election, Fernon, in his official capacity as County Attorney, filed a *quo warranto*

suit to have Fischer declared ineligible for the County Attorney position for failure to satisfy the residency requirement. Although Fischer prevailed in a jury trial, Fernon persisted in his judicial attack by bringing perjury charges against Fischer, claiming that Fischer lied under oath about the length of Fischer's residency in Willacy County. During these events the growing animosity between Fernon and Fischer was well known throughout Willacy County. Fischer perceived Fernon's actions as vindictive and became resentful of Fernon and Fernon's four member staff, which was working for Fernon throughout the period during which Fernon challenged Fischer in court.

When Fischer won the uncontested election and became the new County Attorney he did not wish to continue working with Fernon's office staff. On December 12, 1988, Fischer sent a letter to the plaintiffs stating that he no longer needed their services. The letter explained that Fischer lacked the funding to retain the entire staff, that there was a "basic incompatibility" between Fischer and the staff, and that Fischer wanted a staff that would be loyal to him.

Fischer's termination of the staff's employment prompted the plaintiffs to bring this § 1983 action against Fischer and Willacy County seeking damages for wrongful termination. Plaintiffs alleged that Fischer impermissibly terminated them because of their political association and affiliation, and thus violated their First Amendment rights.

On August 15, 1991, the district court granted Fischer's motion for summary judgment on the basis of qualified immunity and also granted summary judgment as to defendant Willacy County. Plaintiffs filed a motion for a new trial and reconsideration. On December 17, 1991, the district court denied the plaintiffs' motion, reaffirming its previous holding. The district court found "no summary judgment evidence that defendant Fischer's dismissal of the staff in his office constituted "patronage dismissals.' " The court noted that Fischer ran unopposed, that there was no evidence that the employees Fischer hired to replace the plaintiffs were Fischer's political acquaintances, and that Fischer had statutory authorization to remove his office personnel at-will. Because we find no evidence in the record to support the plaintiffs' claim that Fischer's termination of the plaintiffs was politically motivated, we affirm the district court's grant of summary judgment.

Analysis

The plaintiffs allege that Fischer's dismissal of Fernon's office staff constituted a "patronage dismissal" in violation of the First Amendment. Specifically, the plaintiffs' complaint asserts that Fischer fired the staff because of "their loyalty" to the former County Attorney Fernon, and because Fischer wanted to replace "the plaintiffs with persons supportive of or related to persons who were supportive of the defendant's political campaign."[1]

We review the district court's grant of Fischer's motion for summary judgment on the basis of qualified immunity using a de novo standard. *Kinsey v. Salado Independent School District,* 950 F.2d 988, 993 (5th Cir.1992) (en banc), *cert. denied,* --- U.S. ----, 112 S.Ct. 2276, 119 L.Ed.2d 201 (1992). *See also Nieto v. San Perlita Independent School District,* 894 F.2d 174, 177 (5th Cir.1990).

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Pro. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), the Court explained that:

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. In such a situation there can be no "genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

In analyzing the merits of Fischer's motion for summary judgment on the basis of qualified immunity we must first determine whether the plaintiffs have sufficiently established a violation of a constitutional right. If a constitutional violation is established, we must determine whether the right was clearly established at the time the violation occurred. *Siegert v. Gilley,* 111 S.Ct. 1789, 1793 (1991).

In establishing the constitutional violation of a patronage dismissal, an essential element to the plaintiffs' case is demonstrating that the termination was politically motivated. *See Kelly v. City of Leesville,* 897 F.2d 172, 175 (5th Cir.1990) (Plaintiffs must show that the "protected conduct was

---

[1]Plaintiffs' complaint § 12 and § 14.

a "substantial' or "motivating' factor in the decision at issue"); *Tanner v. McCall,* 625 F.2d 1183, 1193 (5th Cir.1980), *cert. denied,* 451 U.S. 907, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981) ("Prima facie proof of a constitutional violation must include evidence of impermissible motive").

It is undisputable that the termination of employees for political reasons is presumptively violative of the First Amendment.[2] The Supreme Court in *Elrod v. Burns* held that patronage firings violate the First Amendment, finding that "the right to associate with the political party of one's choice is an integral part of this basic constitutional freedom." 427 U.S. 347, 357, 96 S.Ct. 2673, 2681, 49 L.Ed.2d 547 (1976), quoting *Kusper v. Pontikes,* 414 U.S. 51, 56-57, 94 S.Ct. 303, 307, 38 L.Ed.2d 260 (1973). The Court revisited the issue of patronage firings in *Branti v. Finkel,* 445 U.S. 507, 515, 100 S.Ct. 1287, 1293, 63 L.Ed.2d 574 (1980), reaffirming that "the First Amendment protects a public employee from discharge based on what he has said, ... [and] what he believes." Most recently, the Court has again emphasized that under *Elrod -Branti,* "the First Amendment forbids government officials to discharge or threaten to discharge public employees solely for not being supporters of the political party in power, unless party affiliation is an appropriate requirement for the position involved." *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 64, 110 S.Ct. 2729, 2732, 111 L.Ed.2d 52 (1990).

Under these Supreme Court precedents it is clear that if the plaintiffs present evidence supporting the contention that they were fired because of their political affiliation or political beliefs, the plaintiffs would state a viable claim under the First Amendment. However, the record reveals no evidence regarding the political motivation of the plaintiffs' termination.

It is undisputed that the defendant terminated the plaintiffs' employment because he perceived the plaintiffs as "disloyal" and "incompatible." But a termination on the grounds of disloyalty or incompatibility does not violate the First Amendment. To rise to the level of a First Amendment violation, the plaintiffs' termination must be motivated by *political* concerns. Thus, the plaintiffs can prove a constitutional violation only if the plaintiffs provide evidence of a political motive to their termination.

---

[2]There are, of course, certain exceptions to the general prohibition against patronage firings.

The plaintiffs claim that the political nature of their termination is supported by two pieces of evidence. First, the plaintiffs rely on Fischer's letter of termination, which states that Fischer lacked the funding to retain all of the plaintiffs, that there was a basic incompatibility between Fischer and the staff, and that Fischer wanted a staff that would be loyal to him. Plaintiffs deduce from this letter that Fischer wanted a staff that is "politically" loyal and "politically" compatible with him. However, plaintiffs provide no support for this leap and nothing in the record supports such an interpretation.

Plaintiffs' second piece of "evidence" is the fact that Fischer fired the staff en masse. Plaintiffs concede that an en masse firing is not necessarily politically motivated, but maintain that the en masse firing provides circumstantial evidence that Fischer's action was motivated by politics rather than merit. While an en masse firing may in some contexts suggest that the employees' termination was not based on individual considerations but rather on a political litmus test, such an inference cannot be drawn in this case. Since Fischer had worked as an assistant attorney in Fernon's office, and in an office of four employees could hardly avoid close working contact with the plaintiffs, Fischer was in a position to evaluate each member of the staff individually. Thus, plaintiff's circumstantial evidence of the "mass" firing is unpersuasive.

We agree with the district court that Fischer's letter of termination and the "mass" firing of the staff provides insufficient evidence of a political motive to Fischer's termination of the plaintiffs. Furthermore, plaintiffs provide no evidence, or even specific factual allegations, in support of plaintiffs' contention that the staff members Fischer hired to replace the plaintiffs were people who helped Fischer in his campaign or were politically favored by Fischer. As the plaintiffs' case presents a "complete failure of proof concerning an essential element of the [plaintiffs'] case," *Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2552, we hold that the defendants are entitled to summary judgment.

Plaintiffs' difficulty in establishing a political motive in the instant case stems from the fact that while the Willacy County Attorney's office experienced a tumultuous clash between Fernon and Fischer, the battle of the County Attorneys was personal rather than political. The plaintiffs make no assertion or insinuation that the acrimonious lawsuit brought by the former County Attorney Fernon

against the new County Attorney Fischer was politically motivated. Unlike the typical case in which an unconstitutional "patronage dismissal" is found, this case involves no allegations of a termination on the basis of an employee's party affiliation or lack thereof, an employee's support of a certain political candidate or lack thereof, or an employee's abstract belief in a political viewpoint or lack thereof. In the instant case, the former County Attorney was not running for re-election or supporting a particular candidate in the election for County Attorney. Hence, the plaintiffs' complaint that they were terminated on the basis of their loyalty to the former County Attorney simply does not reflect a termination based on loyalty to a political party, a political candidate, or a political belief.

The facts of the cases in which the Supreme Court and our Circuit have found impermissible patronage firings are significantly different from the facts in the instant case. Cases finding impermissible patronage terminations involve either an employee's allegiance to a political party, a political candidate, or a political belief. In *Elrod v. Burns,* the Court found an unconstitutional patronage firing when employees were "discharged from their employment solely because they did not support and were not members of the Democratic Party and had failed to obtain the sponsorship of one of its leaders." 427 U.S. at 351, 96 S.Ct. at 2679. In *Branti v. Finkel,* 445 U.S. 507, 508, 100 S.Ct. 1287, 1289, 63 L.Ed.2d 574 (1980), the Court found a violation of the First Amendment when "the [defendant] public defender was about to discharge [the plaintiffs] solely because they were Republicans." Finally, *Rutan v. Republican Party of Illinois* involved a challenge to a state's practice of making employment and benefit decisions on the basis of whether a particular employee or prospective employee supported the Republican Party. 497 U.S. at 64, 110 S.Ct. at 2732.

Although the Supreme Court's decisions involve party affiliation, our Circuit has recognized that "the *Elrod -Branti* doctrine applies when an employment decision is based upon support of and loyalty to a particular candidate as distinguished from a political party." *McBee v. Jim Hogg County,* ("*McBee I* "), 703 F.2d 834, 838 (1983), *vacated on other grounds* 730 F.2d 1009 (1984) (en banc). Thus, in *McBee* we found a patronage firing when the newly elected sheriff terminated employees because the employees supported the former sheriff in his election against the new sheriff. In *Matherne v. Wilson,* 851 F.2d 752 (5th Cir.1988), we similarly found a patronage firing when the

sheriff fired the plaintiff deputy sheriff for actively supporting the campaign of his opponent. In *Lerma v. Rivera,* 920 F.2d 930, (1990, unpublished opinion), we declined to affirm summary judgment in a case involving an employee terminated by the newly-elected county clerk because of his alleged affiliation with the electorally defeated former county clerk. And in *Soderstrum v. Town of Grand Isle,* 925 F.2d 135 (5th Cir.1991), we found sufficient evidence to support a jury's finding of a "political firing' when the newly-elected chief of police terminated the plaintiff's employment because of her close links to the former chief of police whom the defendant ran against and defeated.

All of the above cases are distinguishable from the instant case. The "patronage firings" cases in our Circuit which do not involve terminations of employees on the grounds of party affiliation involve terminations of employees who supported a particular candidate in an electoral battle. In these cases, the employees' political support of the defendant's political rival raised the concern that the employees' termination was based on the employees' political loyalties. Strikingly, a political rivalry is lacking in our case. Because the former County Attorney did not seek re-election, and because Fischer ran unopposed, any rivalry that existed between Fischer and Fernon was personal rather than political. The terminated employees did not support Fernon, or any other candidate, for political office. Nothing in the record suggests, and the plaintiffs do not even allege, that the rivalry between Fischer and Fernon involved political differences. Because there was no *political* rivalry between Fischer and the former County Attorney, the office staff's loyalty to the former County Attorney does not represent the kind of political loyalty that the First Amendment protects. The First Amendment protects an employee's loyalty towards a political party, a candidate, or a belief, but not a personal rival.

There was certainly not a Damon and Phythias relationship between Fischer and Fernon. But a personal enmity does not necessarily involve a political rivalry. To violate the First Amendment, the termination must involve a *political,* motivation. A termination arising from a personal feud or from no cause at all may be baleful, but it is not a patronage dismissal in violation of the First Amendment.

There is no evidence or allegations that Fischer even knew the plaintiffs' political affiliations

or beliefs. To the contrary, in her affidavit, plaintiff Correa plainly acknowledged that when "Steve Fischer ran unopposed for county attorney, neither I or any of the other [plaintiffs] had anything to do with the campaign, either for or against Mr. Fischer. We just did not participate in the political aspects of the office ..." Thus, the plaintiffs do not even allege that they were terminated for their political conduct or speech with regard to the election of Steve Fischer. Unlike the plaintiff in *Matherne,* the plaintiffs in the instant case are not seeking to vindicate their constitutional right to political activity or speech.

In the context of patronage dismissals, the First Amendment protects only those victims who are wounded on the political battle field. Our juridical reconnaissance mission over Willacy County reveals no internecine electoral duels on the ground, and no campaign SCUD missiles in the air. Distinguishing between the casualties of political and personal battles may be a difficult undertaking in particular cases. Happily, the record in the case before us makes this potentially arduous task easy. The evidence in the record does not raise a genuine issue of material fact as to plaintiffs' contention that Fischer terminated their employment for political reasons.

Because we find that the termination of the office staff was not politically motivated, and thus no constitutional right was implicated, we need not reach the question of whether the office staff falls under the "confidential" employee exception to the general prohibition against patronage dismissals, and the further question of whether the plaintiffs' constitutional right was clearly established when the alleged violation occurred.

As we hold that there is no evidence that Fischer's dismissal of the plaintiffs was politically motivated, the district court's grant of Fischer's motion for summary judgment is affirmed.[3]

---

[3]The district court's grant of summary judgment was partially based on a finding that the plaintiffs were "at will" employees and that Fischer was statutorily authorized to terminate their employment. The district court's consideration of the plaintiffs' status as at-will employees is in error. Whether or not the plaintiffs had a vested right in their employment is irrelevant to a First Amendment challenge. As the Court explained in *Rutan:*

> For at least a quarter-century, this Court has made clear that even though a person has no "right" to a valuable government benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest

Moreover, as the only allegation against Willacy County is that it ratified or in some other fashion participated in Fischer's dismissal of the plaintiffs, the grant of Willacy County's motion for summary judgment is also affirmed.

## Conclusion

For the foregoing reasons, the district court's grant of summary judgment is AFFIRMED.

---

in freedom of speech. 497 U.S. 62, 72, 110 S.Ct. 2729, 2736, 111 L.Ed.2d 52 (1990).