Junior Victor MELANCON

v.

ASCENSION PARISH, et al.

Civ. A. No. 92–286–B.

United States District Court,
M.D. Louisiana.

May 10, 1993.

Wendell G. Lindsay, Jr., Lindsay & Marcel, Baton Rouge, LA, for plaintiff.

Michael J. Juneau, Juneau, Judice, Hill & Adley, Lafayette, LA, for defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

POLOZOLA, District Judge.

This matter is before the Court on the defendants' motion for summary judgment. The Court finds that this motion should be denied.

Junior Victor Melancon ("Melancon") worked as the foreman of a work crew employed by the Parish of Ascension, Louisiana. Near the end of 1991, a Policy Jury election was to be held in Ascension Parish. In this

election, Melancon supported George Carpenter in Carpenter's campaign to be re-elected as a member of the Ascension Parish Police Jury. Melancon spoke to Ascension Parish residents, attended fund raisers, and placed endorsements for Carpenter on his vehicle. However, Milton Vicknair defeated Carpenter in the election and replaced him on the Police Jury.

Shortly thereafter, Vicknair attempted to reduce Melancon's pay and reassign him to a laborer's position. Melancon opposed the reassignment and resigned, because of a serious heart condition. Vicknair was apparently aware of Melancon's medical problems which prevented him from working as a laborer.

On April 7, 1992, Melancon filed suit under 42 U.S.C. § 1983 against the Parish of Ascension and the members of the Ascension Parish Police Jury, requesting injunctive relief, compensatory damages and punitive damages. Melancon alleges that he was constructively discharged from his position by Milton Vicknair and the Police Jury because of his support for George Carpenter. Plaintiff further contends that this constructive discharge violates his First Amendment right to support the political candidate of his choice. Defendants filed a motion to dismiss, and argued: (1) the doctrine of qualified immunity precluded suit against the individual defendants, and (2) punitive damages are not recoverable against a municipality under 42 U.S.C. § 1983. Plaintiff dismissed his claim for punitive damages against the Parish of Ascension. Therefore, defendants' motion for summary judgment on this issue is now moot. On February 11, 1993, this Court converted the defendants' motion to dismiss to a motion for summary judgment.

 Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [1] If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.[2] In opposing the granting of summary judgment, the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings, but by its own affidavits, depositions, answers to interrogatories, or admissions the non-moving party must set forth specific facts showing that there is a genuine issue for trial.[3] When all the evidence presented by both parties could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.[4]

In analyzing the merits of the defendants' motion for summary judgment on the basis of qualified immunity, this Court must first determine whether the plaintiff has sufficiently established a violation of a constitutional right. If a constitutional violation is established, the Court must then determine whether the right was clearly established at the time the violation occurred.[5]

The second prong of this test is clearly satisfied. The Supreme Court in *Elrod v. Burns*[6] held that patronage firings violate the First Amendment and found that "the right to associate with the political party of

---

1. Fed.R.Civ.P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Cormier v. Pennzoil Exploration & Production Co.*, 969 F.2d 1559 (5th Cir.1992); *Fontenot v. UpJohn Co.*, 780 F.2d 1190 (5th Cir.1986).

2. *Cormier*, 969 F.2d at 1560.

3. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–877, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir.1991); *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990).

4. *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *Cormier*, 969 F.2d at 1560.

5. *Siegert v. Gilley*, —— U.S. ——, ——, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); *Correa v. Fischer*, 982 F.2d 931 (5th Cir.1993); *Jacquez v. Procunier* 801 F.2d 789, 791 (5th Cir.1986).

6. 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

one's choice is an integral part of this basic constitutional freedom." [7] In 1980, the Court addressed the issue of patronage firings again in *Branti v. Finkel* [8] and found that "the First Amendment protects a public employee from discharge based on what he has said, ... [and] what he believes." [9] More recently, in *Rutan v. Republican Party of Illinois*,[10] the Supreme Court stated that "the First Amendment forbids government officials to discharge or threaten to discharge public employees solely for not being supporters of the political party in power, unless party affiliation is an appropriate requirement for the position involved." [11]

The Fifth Circuit has also recognized that the termination of employees for political reasons is presumptively violative of the First Amendment. In *Correa v. Fischer*,[12] the Fifth Circuit analyzed the Supreme Court precedents and stated:

> [I]t is clear that if the plaintiffs present evidence supporting the contention that they were fired because of their political affiliation or political beliefs, the plaintiffs would state a viable claim under the First Amendment.[13]

■ The fact that Melancon alleges constructive discharge instead of actual discharge is of no consequence. In *Rutan*, the Supreme Court rejected the Seventh Circuit's holding that the only employment decisions that may be violative of the First Amendment are employment decisions that are the substantial equivalent of dismissal. Instead, the Supreme Court found that there are deprivations less harsh than dismissal that nevertheless press public employees and applicants to "conform their beliefs and associations to some state-selected orthodoxy." [14]

Under *Elrod, Rutan,* and *Correa,* Melancon's right under the First Amendment to support the political candidate of his choice was clearly established at the time the alleged violation occurred. Therefore, the Court must now determine whether Melancon has sufficiently established a violation of this constitutional right to preclude summary judgment.

The Fifth Circuit has recognized that the *Elrod–Branti* doctrine applies when an employment decision is based upon a plaintiff's support of a particular candidate, as well as upon his support of a political party.[15] Recently, in *Correa,* the Fifth Circuit summarized its decisions on the subject as follows:

> Thus, in *McBee* we found a patronage firing when the newly elected sheriff terminated employees because the employees supported the former sheriff in his election against the new sheriff. In *Matherne v. Wilson* [851 F.2d 752 (5th Cir.1988) ], (citation omitted) we similarly found a patronage firing when the sheriff fired the plaintiff deputy sheriff for actively supporting the campaign of his opponent. In *Lerma v. Rivera,* [920 F.2d 930 (5th Cir.1990) ], (citation omitted) we declined to affirm summary judgment in a case involving an employee terminated by the newly-elected county clerk because of his alleged affiliation with the electorally defeated former county clerk. And in *Soderstrum v. Town of Grand Isle* [925 F.2d 135 (5th Cir. 1991) ], (citation omitted) we found sufficient evidence to support a jury's finding of a 'political firing' when the newly-elected chief of police terminated the plaintiff's employment because of her close links to the former chief of police whom the defendant ran against and defeated.[16]

---

7. *Elrod,* 427 U.S. at 357, 96 S.Ct. at 2681.

8. 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).

9. *Branti,* 445 U.S. at 515, 100 S.Ct. at 1293.

10. 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990).

11. *Rutan,* 497 U.S. at 64, 110 S.Ct. at 2732.

12. 982 F.2d 931 (5th Cir.1993).

13. *Correa,* 982 F.2d at 933.

14. *Rutan,* 497 U.S. at 75, 110 S.Ct. at 2737.

15. *Correa,* 982 F.2d at 935; *McBee v. Jim Hogg County, Tex.,* 703 F.2d 834, 838 (5th Cir.1983) ("*McBee I*"), vacated on other grounds en banc, 730 F.2d 1009 (1984).

16. *Correa,* 982 F.2d at 935.

In the present case, Melancon alleges that he was constructively discharged by Vicknair and the police jury because of his support for Carpenter. To support this contention, Melancon introduced evidence that Vicknair attempted to reduce his pay and reassign him to a laborer's position, even though Vicknair knew that Melancon's heart condition prevented him from performing work as a laborer.[17] Melancon further contends that because he was forced to resign instead of being fired, Vicknair intended to deprive Melancon of unemployment compensation benefits. Finally, Melancon presented evidence that Vicknair's actions were politically motivated and in accordance with an established policy of the Ascension Parish Police Jury.[18]

Melancon's allegations are included in a detailed amended complaint, and are supported by deposition evidence submitted in accordance with Rule 56 of the Federal Rules of Civil Procedure. The defendants have submitted no evidence in support of the motion for summary judgment other than their own answers to the plaintiff's request for admissions.

■ Accordingly, the Court finds that genuine issues of material fact exist regarding the political motivation of the plaintiff's termination. Although the Court cannot determine whether the dismissal was politically motivated because of material issues of fact in dispute, the Court does find that if plaintiff does establish such a violation at the trial, this right was clearly established at the time the alleged violation occurred.[19]

Therefore, the defendants would be prohibited from relying on the defense of qualified immunity. Since all parties have briefed the issue of qualified immunity, the Court, on its own motion, converts defendants' motion for summary judgment to a cross motion for summary judgment on the issue of qualified immunity.[20]

The Court finds that the plaintiff's motion on the issue of qualified immunity is GRANTED. Thus, the only remaining issues for trial are whether the plaintiff can show his constructive discharge was politically motivated, which defendant, if any, may have violated plaintiff's rights, and what damages and other relief plaintiff may be entitled to receive.

Therefore, IT IS ORDERED that plaintiff's motion for summary judgment on the issue of qualified immunity is GRANTED.

IT IS FURTHER ORDERED that defendants' motion for summary judgment be and it is hereby DENIED.

---

**17.** See plaintiff's deposition at page 27; Arceneaux's deposition at pages 20–22; Vicknair's deposition at pages 21–22.

**18.** See Vicknair's deposition at page 13; plaintiff's deposition at pages 20–22; Arceneaux's deposition at pages 30–31.

**19.** In a motion for summary judgment, a federal district court is not called upon to make credibility assessments of conflicting evidence. To the contrary, all evidence is considered in the light most favorable to the non-movant. See *Lindsey v. Prive Corp.*, 987 F.2d 324, 327 (5th Cir.1993). Therefore, it would be inappropriate for the Court to rule on the merits of Melancon's claim at the summary judgment stage.

**20.** See *Metropolitan Property and Liability Ins. Co. v. Landry*, 729 F.Supp. 1581 (M.D.La.1990).