**Genevieve BELLOW, et al.**

v.

**Desiree CHARBONNET, et al.**

**No. Civ.A. 98–3212.**

United States District Court,
E.D. Louisiana.

May 11, 2000.

William Martin McGoey, Evans & Clesi, New Orleans LA, for Plaintiff.

Ike Spears, Spears & Spears, New Orleans, LA, Reginald James Laurent, New Orleans, LA, for Defendant.

### ORDER AND REASONS

MENTZ, District Judge.

Plaintiffs brought this civil rights action under 42 U.S.C. § 1983 alleging that the defendant, Desiree Charbonnet, the elected Recorder of Mortgages in Orleans Parish, terminated their employment because of their campaign activity on behalf of her political opponent, thereby violating their rights under the First Amendment and

Louisiana state law. The court addresses here Charbonnet's motion for summary judgment.

The plaintiffs are ten[1] former employees in the Office of the former Recorder of Mortgages, Michael McCrossen. All of the plaintiffs actively campaigned for and/or financially supported McCrossen. They were among 28 employees terminated when Charbonnet assumed office.

■ It is undisputed that firing a public employee because of political activities violates the First Amendment and is actionable under § 1983, unless political loyalty is an appropriate qualification for the job. *See Elrod v. Burns,* 427 U.S. 347, 357, 96 S.Ct. 2673, 2681, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Coughlin v. Lee,* 946 F.2d 1152, 1158 (5th Cir. 1991). It also is not disputed that political loyalty is not an appropriate requirement for the effective performance of the plaintiffs' jobs, which were primarily technical and ministerial in function. *See McBee v. Jim Hogg County, Texas,* 730 F.2d 1009, 1016 (5th Cir.1984) (en banc); *Vojvodich v. Lopez,* 48 F.3d 879 (5th Cir.), *cert. denied,* 516 U.S. 861, 116 S.Ct. 169, 133 L.Ed.2d 111 (1995); *Furlong v. Gudknecht,* 808 F.2d 233, 235 (3rd Cir.1986).

The issue before the court is whether Charbonnet terminated the plaintiffs because of their political activities. The United States Supreme Court established the burden of proof on the issue of causation in *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The employee must first establish a prima facie case by showing that his protected conduct was a substantial motivating factor in his discharge. *Id.,* 429 U.S. at 287, 97 S.Ct. at 576. The employer then has the burden of showing a legitimate reason for which it would have discharged the employee even in the absence of his protected conduct.

*Id.* The employee can refute that showing by evidence that his employer's ostensible explanation for the discharge is merely pretextual. Thus, in order to survive the present motion for summary judgment, the plaintiffs must offer facts to create a genuine issue as to whether their political activity was a substantial motivating factor for their termination.

Charbonnet was elected as Recorder of Mortgages on February 7, 1998. She assumed her office on May 4, 1998. In the interim, she established a transition team to help her assemble a competent staff to run the office. On March 11, 1998, Charbonnet wrote McCrossen requesting a tour of the office and an opportunity to interview current employees. He denied her request. It is undisputed that McCrossen refused to cooperate with Charbonnet during the transition because he was angered by her campaign allegations that he had sexually harassed an employee.

On April 10, 1998, Charbonnet hired as her Chief Deputy, Carol Carter, a real estate abstractor with twenty years experience who through her business is familiar with the employees and operations of the Office of the Recorder of Mortgages. Together they then evaluated the existing staff.

The Office of Recorder of Mortgages is staffed by unclassified personnel who are not subject to Civil Service rules and regulations, and are employed at-will. All expenses of the Office of the Recorder of Mortgages are paid from an account known as the Judicial Expense Fund for Orleans Parish. *See* La.Rev.Stat. ann. § 13:1312. All disbursements from the Judicial Expense Fund are controlled by the Judges of the Civil District Court for the Parish of Orleans and the First and Second City Courts of the City of New Orleans, sitting *en banc. Id.*

---

1. There were originally fourteen plaintiffs, four of whom dismissed their suits voluntari-   ly.

When Charbonnet took over the Office of Recorder of Mortgages, the judges appropriated funds for 44 positions. There had been 54 positions under McCrossen, ten of which were "special project" positions. These ten positions were effectively eliminated via budgetary reductions imposed by the judges.

Charbonnet decided not to re-appoint an additional 18, for a total of 28 terminations on McCrossen's staff. She notified them of her decision by letter dated April 24, 1998, stating in relevant part that: "I have made an assessment of the office and I have determined that I will not need your services...." The Judicial Expense Fund issued termination notices stating "change of administration" as the reason for discharge.

Charbonnet appointed a total of 34 positions—20 from McCrossen's staff, and 14 new employees. Of the fourteen new employees, 5 had worked on Charbonnet's political campaign and 4 were recommended by her political allies.

It is undisputed that all plaintiffs who were terminated engaged in political activities in support of McCrossen. Plaintiffs argue that this fact creates a genuine issue of material fact as to whether the terminations were politically motivated. As all of McCrossen's staff supported him politically, it is inaccurate to suggest that Charbonnet selectively chose only McCrossen supporters for termination.

This is not a case of an office-wide elimination of the former official's staff. Charbonnet appointed a majority of her staff from McCrossen's staff. Nor does the evidence suggest that her terminations were directed at prominent McCrossen supporters or his supervisory staff. The political activity of the plaintiffs consisted primarily of passing out campaign leaflets, posting campaign signs, and canvassing neighborhoods. Plaintiff Darlene Monju hosted a political party for McCrossen, and plaintiff Wanda Mason represented him at political functions and appeared in a McCrossen television advertisement.

Charbonnet's undisputed evidence shows that although she assumed everyone who worked for McCrossen supported him politically, she was unaware of any specific political activities of any of the plaintiffs except for Wanda Mason whom she saw representing McCrossen at a political function. There is no evidence that Charbonnet personally knew any of the plaintiffs. Eight out of ten departments in the Mortgage Office have supervisors who were retained from McCrossen's staff. Of the 20 McCrossen staff members retained, 8 gave affidavits describing their political activities on behalf of McCrossen. Their political activities were essentially the same type of activities as those of the plaintiffs' and included financial contributions, one of which was in the amount of $500.

Likewise, the fact that no one on Charbonnet's transition team interviewed the plaintiffs or examined their personnel files prior to their termination does not show that the terminations were politically based. McCrossen precluded Charbonnet from visiting the Office of the Recorder of Mortgages or interviewing employees during office hours. The evidence is undisputed that Charbonnet had resumes from all of the plaintiffs prior to making her decisions about whom to appoint. As the plaintiffs were not protected by Civil Service, they were employed at will, and could be terminated at any time without the necessity of showing cause. *See* La. Civ. Code art. 2747; *Mix v. University of New Orleans,* 609 So.2d 958, 961 (La.App. 4 Cir.1992), *writ denied,* 612 So.2d 83 (1993) (employment at will applies to government employees who are not protected by civil service provisions).

■ The plaintiffs offered hearsay evidence of statements allegedly made by Charbonnet supporters and/or employees to show that the terminations were politically motivated. Under Federal Rule of Evidence 801(d)(2)(D), a statement is not hearsay if:

The statement is offered against a party and is ... (D) a statement by the party's agent or servant concerning a a matter within the scope of the agency or employment, made during the existence of the relationship....

The affidavit of plaintiff Wanda Mason, a supervisor in McCrossen's office, states that Camille Bourgeois, McCrossen's Chief Deputy, told her that Carol Carter said "they would not have their jobs because Charbonnet was mad with McCrossen." This statement is inadmissible double hearsay. Under the Federal Rules of Evidence, "[h]earsay within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." Fed.R.Evid. 805. Here the combined statement is not admissible because Bourgeois's statement is not covered by any exception to the hearsay rule. She is neither an agent nor servant of Charbonnet and therefore, does not come within the Rule 801(d)(2)(D) exception.

■ Mason also averred that she spoke directly to Carol Carter about what Bourgeois had said, and Carter said: "You have Mike to thank for not having your job because Desiree is 'fed up with Mike'." Accepting this evidence as true, and setting aside the questions of whether Carter made this statement during a time period when she could be considered Charbonnet's agent or servant and whether this sort of comment was within the scope of her agency or employment, this evidence does not establish that Mason was terminated because of her political activity. Instead, the statement is consistent with the evidence that McCrossen's office had failed to cooperate with Charbonnet in the transition.

■ The same is true of Mason's averment that she asked Wayne Woods about her job, and he said that "she would be terminated because she did not help in the transition." Woods was a member of Charbonnet's transition team, but he was not hired as an employee in Charbonnet's office. There is no evidence to show that his statement could come within Rule 801(d)(2)(D)'s exception to hearsay, or even if it did, that it could establish a genuine issue of material fact as to whether the termination was substantially politically motivated. *See Correa v. Fischer*, 982 F.2d 931, 933 (5th Cir.1993) (termination based on a perception of disloyalty or incompatibility does not violate the First Amendment).

■ Mason further averred that she received an anonymous letter stating that "she should be ashamed of herself for begging Charbonnet for her job and that they (the anonymous senders) worked in the Charbonnet campaign and knew that Mason would be out of the mortgage office." There is no argument or evidence to show that this hearsay statement falls within any of the exceptions to the hearsay rule. *See* Fed.R.Evid. 801 and 802.

■ Plaintiffs also offered the hearsay statement of plaintiff Darlene Monju. Monju's affidavit states that after she was terminated, she went to the office to retrieve her personal belongings and spoke with Patsy Simoneaux, whom she believed worked in Carol Carter's abstracting business. Monju stated that when she told Simoneaux that she "was naive enough to believe that [her] work record would protect [her] job," Patsy responded: "Darlene, that's how politics works." This hearsay statement is not admissible against Charbonnet under Rule 801(d)(2)(D) because there is no evidence that Simoneaux was her agent or servant, or in any way authorized to speak for her. There is no evidence to show that Simoneaux's statement reflects Charbonnet's views.

■ Plaintiffs offered the deposition testimony of plaintiff Julie Lewis, who testified that Johnny Jackson, an elected public official, attempted to speak to Charbonnet on her behalf. He first contacted Charbonnet's brother, who referred him to

Blair Boutte, who told Jackson: "I'm sorry. I would like to help you, Johnny, but she's got to go because she's Michael's sweetie." This hearsay statement is not admissible. Again, there is no evidence that Boutte was an agent or servant of Charbonnet, that he had any hiring authority, or that his view reflected the view of Charbonnet. Indeed, the evidence does not show who Boutte is or his connection, if any, to Charbonnet. And, even assuming the admissibility of this statement, the fact that Lewis was not hired because she is "McCrossen's sweetie" does not create a genuine issue of material fact regarding whether the Charbonnet's decision to terminate the plaintiffs was substantially motivated by their political activities.

■ Plaintiffs also rely on their separation notices which listed the reason for termination as "change in administration." The notices were signed by the payroll clerk for the Judicial Expense Fund. There is no evidence that the clerk was an agent or employee of Charbonnet, that Charbonnet directed the clerk to state "change in administration" as the reason for termination, or that Charbonnet's office maintained these records. In addition, there is no evidence to support interpreting the phrase "change in administration" as "due to your political activity." In Charbonnet's deposition testimony and her affidavit, she explained her goals for the office. Based on this evidence, "change in administration" may reasonably be interpreted to mean such things as budget reductions, different management goals or philosophies, or changes in the structure of the office, and considering the lack of evidence to show political motivation, may not reasonably be interpreted to mean "due to your political activity." *See Malone v. Greco,* 92–CV–178S, 1995 WL 222052 *10–11 (W.D.N.Y.1995) (granting summary judgment notwithstanding employment record stating termination "due to political change over").

The court finds that the plaintiffs have not presented sufficient evidence to create a genuine issue of material fact regarding whether they were terminated for their political activities.

Because the plaintiffs have failed to establish a prima facie case, the court need not address the defense argument that the plaintiffs were dismissed for substandard work performance and/or unprofessional conduct.

Plaintiffs' state law claim under Louisiana Revised Statute § 23:961 also fails due to lack of supporting evidence. Section 23:961 provides in relevant part:

> [N]o employer having regularly in his employ twenty or more employees shall make, adopt, or enforce any rule, regulation, or policy forbidding or preventing any of his employees from engaging or participating in politics, or from becoming a candidate for public office. No such employer shall adopt or enforce any rule, regulation, or policy which will control, direct, or tend to control or direct the political activities or affiliations of his employees, nor coerce or influence, or attempt to coerce or influence any of his employees by means of threats of discharge or of loss of employment in case such employees should support or become affiliated with any particular political faction or organization, or participate in political activities of any nature or character.

Pretermitting the novel issue under Louisiana law of whether the Recorder of Mortgages in Orleans Parish is the "employer" of her staff within the meaning of § 23:961, there is no evidence in this case to show that Charbonnet had a "rule, regulation, or policy" to "control, direct, or tend to control or direct" the political activities of her employees, nor is there any evidence to show that she "coerce[d] or influence[d], or attempt[ed] to coerce or influence" her employees by loss of employment because of their political activities.

Accordingly,

IT IS ORDERED that the Motion of defendant Desiree Charbonnet for summary judgment is GRANTED, dismissing all claims of all plaintiffs with prejudice.