IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-30729
_____

GENEVIEVE BELLOW, ET AL,

                                        Plaintiffs,

LINDA CHERAMIE; ANGELA ESTADE;
MONICA LEWIS; WANDA MASON;
DARLENE MONJU; WILBERINA RUSSELL,

                                        Plaintiffs-Appellants,

                          v.

DESIREE CHARBONNET; ET AL,

                                        Defendants,

DESIREE CHARBONNET,

                                        Defendant-Appellee.

- - - - - - - - - - -
Appeal from the United States District Court
for the Eastern District of Louisiana, New Orleans
98-CV-3121-I
- - - - - - - - - - -
September 18, 2001
Before KING, Chief Judge, and ALDISERT[*] and BENAVIDES, Circuit
Judges.

PER CURIAM:[**]

    Plaintiffs-Appellants ("Plaintiffs") are six former

employees of the Orleans Parish Recorder of Mortgages Office.

_____

    [*] Circuit Judge of the Third Circuit, sitting by designation.

    [**] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Plaintiffs were terminated after their employer, then-Recorder of Mortgages, Michael McCrossen ("McCrossen"), was defeated by Defendant-Appellant Desiree Charbonnet ("Charbonnet"). Plaintiffs filed the instant action against Charbonnet under 42 U.S.C. § 1983, alleging that they were terminated based on their political activity in violation of the First Amendment. The district court granted summary judgment in favor of Charbonnet, holding that Plaintiffs failed to present a genuine issue of material fact regarding whether they were terminated for political reasons. For the reasons that follow, we AFFIRM.

## I. Facts and Procedural History

The relevant facts are largely undisputed. Charbonnet was elected as the new Recorder of Mortgages for the Orleans Parish on February 7, 1998 and assumed office on May 4, 1998. On February 21, 1998, Charbonnet hired Carol Carter ("Carter") to assist her with the transition. Carter was a real estate abstractor who had worked in various Orleans Parish public records offices for more than twenty years and was familiar with the operations and staff of the Recorder of Mortgages office. She was not an active supporter of Charbonnet's campaign. In fact, although she had been friendly with Charbonnet during the campaign, Carter had provided financial support to McCrossen's campaign. Despite Carter's support of McCrossen, Charbonnet appointed her as the Chief Deputy Clerk in the Office of Recorder

of Mortgages.  Among Carter's duties during the transition was to provide an assessment of the existing personnel working in the Office and recommend retaining or terminating them.

It is undisputed that the transition period between the McCrossen and Charbonnet administrations was marked with difficulty. McCrossen, who according to Plaintiff Wanda Mason ("Mason") was bitter about the campaign, refused to cooperate with Charbonnet.  Although Charbonnet made an effort to contact McCrossen, he never personally returned her call.  On March 11, 1998, Charbonnet wrote McCrossen requesting an office tour and an opportunity to interview current employees.  McCrossen refused this request. Moreover, he prohibited Charbonnet from interviewing employees during office hours.  This lack of cooperation delayed the transition process and reportedly angered Charbonnet. *See* Ps. Br. 25 ("It is undisputed that . . . bad feelings on both sides remained following the election.").

On April 24, 1998, Charbonnet terminated twenty-eight employees, reappointed twenty employees, and appointed fourteen new employees.[1]  Plaintiffs were among the twenty-eight employees

---

[1]     All expenses of the Recorder of Mortgages Office are paid from the Judicial Expense Fund for Orleans Parish.  The Judges of the Civil District Court for Orleans Parish appropriated funds for forty-four positions in the Office.  Previously, under McCrossen, funds had been allocated for fifty-four positions.  Thus, due to the budget reduction, Charbonnet was required to eliminate ten positions.

terminated by Charbonnet.[2]  In addition to working for McCrossen during his term as Recorder of Mortgages, Plaintiffs each assisted him in his campaign against Charbonnet.  Four of the Plaintiffs engaged in campaign leafleting for McCrossen; one hosted a political party for McCrossen; and the other frequently represented McCrossen at political functions, where she was once featured on camera in a McCrossen television advertisement.

After the start of the Charbonnet administration, Plaintiffs brought suit against Charbonnet, alleging that Charbonnet discharged them because of their political beliefs, political association, and/or political activities with McCrossen.  Charbonnet moved for summary judgment.  After the deadline for filing their response to Charbonnet's motion, the Plaintiffs moved for leave to file a supplemental opposition memorandum and exhibits.  The district court initially granted Plaintiffs' motion on May 2, 2000; however, on May 3, Charbonnet filed a motion to strike certain exhibits included in the supplemental filing.  The district court granted Charbonnet's motion to strike.  On May 11, 2000, the district court granted Charbonnet's motion for summary judgment, finding that the Plaintiffs had failed to create a genuine issue of material fact regarding whether they were terminated for their political

---

[2]  The suit was originally brought by fourteen employees whose employment was terminated during the administrative transition. Eight employees have since voluntarily dismissed their claims.

activities, and thus, they failed to establish a prima facie case of political discrimination.  Plaintiffs have timely appealed and complain of the district court's summary judgment ruling and its evidentiary rulings striking certain exhibits attached to Plaintiffs' supplemental opposition to Charbonnet's summary judgment motion.  We write essentially to address Plaintiff's complaint with respect to the district court's summary judgment ruling.[3]

## II. Discussion

Generally, "the termination of employees for political reasons is presumptively violative of the First Amendment." *Correa v. Fischer*, 982 F.2d 931, 933 (5th Cir. 1993).  When a plaintiff provides direct evidence of retaliation, this circuit applies the test articulated in *Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274 (1977).  *See Brady v. Fort Bend County*, 145 F.3d 691, 711-712 (5th Cir. 1998) (stating that *Mt. Healthy* test is most appropriate standard for deciding First Amendment retaliation case involving direct evidence of retaliation).  Direct evidence is evidence that "if believed, proves the fact without inference or presumption."  *Brown v. East*

---

[3]    Regarding, Plaintiffs' attack on the district court's evidentiary rulings, our review of the record convinces us that the district court did not abuse its discretion in granting Charbonnet's motion to strike certain exhibits contained in its supplemental memorandum in opposition to Charbonnet's motion for summary judgment.  Accordingly, we reject Plaintiffs' attack on the evidentiary rulings.

*Miss. Elec. Power Assoc.*, 989 F.2d 858, 861 (5th Cir. 1993).

Plaintiffs contend that they have adduced direct evidence in the form of (1) evidence that Plaintiffs were qualified for their jobs and in good standing; (2) there was considerable animosity between McCrossen and Charbonnet; (3) Carter told Mason that she and Camille Bourgeois ("Bourgeois") "have Mike [McCrossen] to thank for not having your job because Desiree [Charbonnet] is 'fed up with Mike'"; (4) shortly thereafter 28 of McCrossen's former employees and supporters including Mason and Bourgeois were terminated; and (5) the notices of termination indicated the reason as "change in administration." Even if believed by a trier of fact, none of this evidence constitutes direct evidence. At best, this is evidence that, combined with other indirect evidence, might provide the basis for an inference of discrimination. Accordingly, we reject Plaintiffs' suggestion that they have presented direct evidence of retaliation.

Plaintiffs contend that the proper framework for analyzing a case featuring indirect evidence of retaliation is the burden-shifting test familiar to employment discrimination cases. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802-04 (1973). Assuming, *arguendo*, that *McDonnell Douglas* applies to cases such as this one,[4] Plaintiffs must establish a prima facie case by

---

[4]    Because Plaintiffs would fare no better under the *Mt. Healthy* framework, we need not decide which test is most appropriate for analyzing indirect evidence of retaliation in the First Amendment context. *Cf. Gonzales v. Dallas County, Tex.*, 249

6

showing that they participated in a protected activity, that an adverse employment action was taken against them, and that there was a causal connection between the protected activity and the adverse employment action. *See Graning v. Sherburne County*, 172 F.3d 611, 615 (8th Cir. 1999) (applying burden-shifting framework to First Amendment retaliation case); *Mota v. Univ. of Tex. Houston Health Science Center*, --F.3d–, 2001WL897191, at *5 (5th Cir. August 9, 2001) (describing prima facie case of Title VII retaliation). Plaintiffs' prima facie showing is exceedingly weak.  Essentially, they rely on evidence that Charbonnet admitted that she assumed they all supported McCrossen during the campaign and that she terminated their employment shortly before she took office.  We note, however, that the district court found, based on undisputed evidence, that several of McCrossen's employees whom Charbonnet did retain also supported McCrossen during the campaign, often to the same extent as those whom Charbonnet fired.  Nevertheless, assuming that this minimal showing suffices to establish a prima facie case of retaliation, Charbonnet must produce evidence of a nondiscriminatory reason for the adverse employment action.  *Graning*, 172 F.3d at 615.

---

F.3d 406, 412 n.6 (5th Cir. 2001) (stating that *Mt. Healthy* framework applies to First Amendment retaliation claims while addressing narrow issue of whether defendant would have taken the same action in the absence of protected conduct). *See McMillian v. Svetanoff*, 878 F.2d 186, 190 n.3 (7th Cir. 1989) (declining to decide whether *Mt. Healthy* or *McDonnell Douglas* test applies to First Amendment discrimination claim because plaintiff would not succeed under either standard).

Charbonnet can easily satisfy this burden, as she has produced evidence that she relied upon Carter's recommendations, which were critical of Plaintiffs for various reasons, including poor work quality and unprofessional conduct.

The crucial issue, therefore, is whether Plaintiffs have established a genuine issue of material fact regarding whether Charbonnet's asserted grounds for their termination is merely pretextual. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We must view all the evidence in the light most favorable to the party opposing the motion and draw all reasonable inferences in that party's favor. *Id.* at 255. "A mere scintilla of evidence of pretext does not create an issue of material fact in all cases. *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 903 (5th Cir. 2000). Rather, the court must consider a number of factors, including the strength of Plaintiffs' prima facie case. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148-49 (2000) Because Plaintiffs must present *sufficient* evidence of the falsity of an employer's proffered justification, *see id.* at 148, it is "possible for a plaintiff's evidence to permit a tenuous inference of pretext and yet be insufficient to support a reasonable inference of discrimination." *Crawford*, 234 F.3d at 903.

This is such a case. Placed in the proper context,

8

Plaintiffs' evidence, either standing alone or considered *in toto*, is insufficient to sustain a reasonable inference of pretext. Plaintiffs rely primarily on two statements. First, they point to Carter's explanation to Mason and Bourgeois: "You have Mike to thank for not having your job because Desiree is 'fed up with Mike.'" This statement, Plaintiffs contend, is proof that Charbonnet "held McCrossen's refusal to cooperate against plaintiffs." P. Br. at 8. Plaintiffs' argument, however, confuses personal enmity with political rivalry. "To violate the First Amendment, the termination must involve a *political*, motivation. A termination arising from a personal feud . . . may be baleful, but it is not a patronage dismissal in violation of the First Amendment." *Correa v. Fischer*, 982 F.2d 931, 935 (5th Cir. 1993). A reasonable trier of fact could not, by virtue of this statement, infer a retaliatory motive on the part of Charbonnet. Rather, even at its most sinister, the statement suggests that Charbonnet was responding to the animosity and delay that characterized the transition and was the result of McCrossen's post-election hostility to the Charbonnet transition efforts.[5]

---

[5] Plaintiffs suggest that the district court erroneously weighed the evidence when it examined the context in which the statement was made. Although *Reeves* directs us to "draw all reasonable inferences in favor of the nonmoving party, and . . . not make credibility determinations or weigh the evidence[,]" 530 U.S. at 150, we also must consider the factual context of the claim at summary judgment. *See id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Plaintiffs also rely heavily on a statement contained in the termination notice that listed the reason for the discharge as "change in administration." They assert that this explanation is evidence of patronage dismissals, as it suggests that the election of Charbonnet, not Plaintiffs' job performance, was the reason behind the firings. Even considered in the light most favorable to the Plaintiffs, however, this statement is insufficient to justify an inference of retaliation. First, the notice was sent by the Judicial Fund, not Charbonnet, and Plaintiffs have adduced no evidence that Charbonnet had anything to do with the listing of "change in administration" on the form. In fact, an April 24, 1998 letter from Charbonnet to the terminated employees explains that the terminations were the result of her assessment of the office. As such, there is no indication that the form accurately represents Charbonnet's reasons for the discharge. Moreover, as the district court noted, the phrase is subject to several interpretations. Indeed, a reasonable fact finder might find it difficult to escape the conclusion that the phrase reflected the Judicial Fund's view of the terminations, i.e, a new administration made personnel changes to ensure that it had the most capable employees and would avoid the problems that had hampered the transition. *See Crawford*, 234 F.3d at 903 (noting that it is not unreasonable for an employer to "seek a fresh start" in a troubled office).

Even when considered with Plaintiffs' other evidence, these

10

statements do not create a sufficient fact issue to avoid summary judgment. The remainder of Plaintiffs' case amounts to supposition and conjecture regarding the timing of the dismissals, the extent to which Charbonnet and Carter actually reviewed Plaintiffs' job performance, and the large number of discharged employees. Specifically, Plaintiffs note that they were terminated prior to Charbonnet's first day on the job. They argue that this timing indicates that Charbonnet fired them before having any opportunity to evaluate their job performance. Charbonnet contends, and Plaintiffs do not offer any contradictory evidence, that she relied heavily on Carter's recommendations. Plaintiffs also do not dispute that Carter had extensive experience with the Recorder's office. As part of the evaluation process, Carter met with employees and reviewed resumes. She specifically concluded that the discharged Plaintiffs had either engaged in unprofessional conduct or performed below acceptable standards.[6]

Plaintiffs contend that Carter's conclusions from this evaluation process are so shallow and unsupported that they suggest pretext. Moreover, they point to evidence in the form of Plaintiffs' affidavits disputing the conclusions reached by Carter. They have not produced any evidence, though, that

---

[6] This undisputed evidence distinguishes the present case from the facts presented by *Vojvodich v. Lopez*, 48 F.3d 879, 886 (5th Cir. 1995), in which the plaintiff's performance evaluations were satisfactory and the decisionmaker had expressed no dissatisfaction with his performance.

11

Charbonnet similarly discounted the evaluations or did not rely on them in good faith. Their opinion regarding the sufficiency of the evaluations or their conjecture on the role they played in the decisionmaking process cannot create a sufficient fact issue to survive summary judgment. *See Odom v. Frank*, 3 F.3d 839, 849 (5th Cir. 1993) (rejecting otherwise unsupported opinion and speculation).

Furthermore, the number of firings–twenty-eight of McCrossen's employees–does not support a conclusion that Charbonnet was conducting a wholesale patronage dismissal. Of the thirty-four staff positions that Charbonnet filled, she hired twenty former McCrossen employees. Nine of the fourteen new employees either supported Charbonnet or were recommended by her political allies. Plaintiffs argue that the only reason why Charbonnet did not terminate all of McCrossen's employees is that the office would not have been manageable with an entirely new workforce. Charbonnet contends that her retention of so many McCrossen employees demonstrates that political retaliation was not a factor in employment decisions. Given these competing interpretations, a reasonable jury could not find that the magnitude of the discharge gives rise to an inference of retaliation.

In sum, Plaintiffs' evidence at best creates a weak fact issue on the question of retaliation. The statements made by Carter and contained in the termination notice, even when viewed

12

in the light most favorable to Plaintiffs and considered in combination with the circumstantial evidence regarding the timing of the decision, the review process, and the number of dismissals, at most give rise to a tenuous issue of fact. Having placed Plaintiffs' pretext evidence in its proper context with Charbonnet's undisputed evidence and considered Plaintiffs' own extremely weak prima facie showing, we conclude that no reasonable trier of fact could infer retaliation.

### III. Conclusion

Plaintiffs have failed to present sufficient evidence from which a reasonable fact finder could conclude that Charbonnet's decision to terminate Plaintiffs was substantially motivated by retaliation for their political participation. Accordingly, we AFFIRM the holding of the district court.